# FREEMAN, NOOTER & GINSBERG
## ATTORNEYS AT LAW

LOUIS M. FREEMAN
THOMAS H. NOOTER*
LEE A. GINSBERG

CHARLENE RAMOS
OFFICE MANAGER

*NY AND CALIF. BARS

THE UNDERWOOD BUILDING
30 VESEY STREET, SUITE 100
NEW YORK, N.Y. 10007

(212) 608-0808
TELECOPIER (212) 962-9696
E-MAIL: FNGLAW@AOL.COM

November 29, 2007

Via ECF

Honorable Gerard E. Lynch
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street, Courtroom 6B
New York, NY 10007

                **Re: United States v. Jesus Justiniano**
                <u>**Dkt. No. 07 Cr. 905 (GEL)**</u>

Dear Judge Lynch:

       This letter is being submitted to aid the Court when imposing sentence upon Jesus Justiniano who is scheduled to be sentenced on December 7, 2007. For reasons that follow, we respectfully request a sentence that is as lenient as possible.

### A. Offense Conduct

       Jesus Justiniano was arrested on June 6, 2007 when he was found to be in possession of a .38 handgun. He was taken into federal custody on June 25, 2007 pursuant to a criminal complaint which accused him of being a felon in possession of a firearm. On September 25, 2007, Mr. Justiniano pled guilty to a one-count information. There was no plea agreement.

       In a <u>Pimentel</u> letter, the government estimated that Mr. Justiniano's applicable advisory guideline sentence was 70 to 87 months. This estimate was based on: a base offense level of 24, pursuant to USSG §2K2.1(a)(2); a three level reduction, pursuant to §3E1.1(a) and (b); and, Mr. Justiniano being in a criminal history category (CHC) of V, as a result his 12 criminal history points.

### B. The Presentence Report and the Appropriate Advisory Guideline Calculation

The presentence report (PSR) that was issued by the probation department determined that Mr. Justiniano had a CHC of VI because he had fourteen criminal history points. PSR ¶ 58 assessed two additional points because Mr. Justiniano committed the offense less than two years after release from imprisonment.

While this two point assessment is correct, the criminal history computation is nonetheless incorrect. The PSR (and the Pimentel) assess two criminal history points in ¶42, pursuant to USSG 4A1.1(b), because Mr. Justiniano was sentenced on March 19, 1993 to 90 days for an offense that occurred on February 2, 1993.

However, this particular sentence should not be included in the criminal history computation because it was a sentence of less than thirteen months (See 4A1.1(a) and (b)) and it occurred more than ten years prior to the time period of June 2007, which is when Mr. Justiniano began engaging in the behavior related to the instant case. See USSG § 4A1.2(e)(2) (Applicable Time Period: "Any other prior sentence that was imposed within ten years of the defendant's commencement of the instant offense is counted").

We submitted a letter to the probation department regarding this matter but we have not yet received a response.

Accordingly, we request that the PSR be amended to reflect the fact that Mr. Justiniano has a total of twelve criminal history points, not fourteen; that he is in a CHC of V, not VI; and, that he is subject to the advisory sentence range of 70 to 87 months, not 77 to 96 months.

The PSR addendum recommends a sentence of 77 months (under the erroneous criminal history calculation) based on the Probation Department's view that a sentence at the lowest end of the guidelines is justified by the fact that Mr. Justiniano's drug addiction greatly contributed to his involvement in criminal activity. See PSR Addendum, P. 20. To the extent that the Probation Department recommends a sentence at the low end of the advisory guidelines, we agree that this sentence is warranted based on Mr. Justiniano's drug abuse and his history of suffering physical abuse.

### C. Jesus Justiniano's Background

Mr. Justiniano is a thirty-six year old, Hispanic man who has lived in Bronx, New York for most of his life. His early childhood was spent in Puerto Rico where he lived with his parents Feliz Justiniano and Felicidad Valentin. Mr. Justiniano's father was a violent alcoholic who would become physically abusive when drunk and focus his rage and frustrations on his wife and children. Sadly, Feliz was drunk and in a foul mood on a daily basis. When Mr. Justiniano was just eight years old, his mother took him and his siblings and

they left Puerto Rico to escape Feliz' abuse. They came to live in New York near Felicidad's relatives.

For the next two years, Felicidad and her children struggled greatly and they depended on her relatives and public assistance to get by. While it was tough, Mr. Justiniano and his siblings were enjoying the peacefulness of being away from their father's abuse. Unfortunately that peace did not last long. When Mr. Justiniano was 10 years old his father located them and moved to New York.

The next few years were extremely difficult for Felicidad and her children. Feliz still drank excessively and he remained as abusive as ever. As a result, Mr. Justiniano and his siblings were forced to live with terrible physical abuse for the next few years. The abuse and fighting was so bad that on numerous occasions Felicidad and her children ran from the house in the middle of the night to flee to the safety of a relative's house. Likewise, on numerous occasions police officers were called to the house either by the neighbors who heard violent fighting or by the Justiniano children when their feared that their mother would be seriously injured by their father. Felicidad did not want to remain with her husband; however, after he tracked her down in New York and moved right into her apartment, she did not have the money or the emotional strength to leave him again.

However, as Mr. Justiniano and his siblings grew older (and bigger), they began to defend themselves and their mother from their father's abuse. Finally, when Mr. Justiniano was in his late teens, he and his siblings confronted their father about the abuse, demanding that it stop and threatening to fight back and have him arrested if it happened again. Shortly after this confrontation, their father left home and he never returned. Mr. Justiniano was relieved that his mother would no longer be suffering abuse at the hands of her husband. When Mr. Justiniano's father died in 2006, no one in the family was surprised to discover that his death was from alcohol abuse.

Living in a household that was filed with abuse and alcoholism did not provide Mr. Justiniano and his siblings with a stable environment to grow up in. With a father who was an abusive alcoholic and a mother who was battered, the Justiniano children were not provided with good examples to follow, nor were they given a good foundation upon which to build their own lives. As a result, most of the Justiniano children, including Mr. Justiniano, suffer from mental deficiencies or emotional problems and they have struggled with drug or alcohol addictions for many years.

Mr. Justiniano only attended school until the eighth grade, he has a sporadic work history and he has been addicted to cocaine for many years. Only one of his siblings is currently employed: his brother Walter, who is age 40, is a building superintendant. All of the rest of his siblings suffer from some mental disease, physical impairment, or drug addiction. Oscar, who is 33, is schizophrenic; Elidad, who is 36, is HIV positive and she receives Supplemental Security Income (SSI); Amerita, who is 41, receives SSI for unspecified mental problems; Feliz (Jr.) who is 38, is in an inpatient drug treatment facility;

and Ray, who is age 44, lives with Felicidad and is on public assistance. Lastly, his sister Debbie lost her battle with AIDS in 1999.

It can be fairly said that this family never recovered from its tumultuous and abusive past, but instead brought the destructive behavior into their futures. They did not receive strong educational foundations upon which they could build; they never received any family counseling to address the impact of their father's alcoholism and violent abuse; and they never received individual counseling to deal with the impact of their childhoods so they could figure out how to live their lives differently as adults.

Mr. Justiniano's family background provides some context for the actions that led him down the unlawful pathways but it does not seek to excuse them. Mr. Justiano realizes that he has to learn from his past mistakes and make changes to his life starting now. In this regard, Mr. Justiniano started seeing a psychologist at the MCC to help him start the long process recovering from his childhood to building for his future. He hopes to continue counseling while he is incarcerated and he hopes to be able to complete a drug treatment program.

### D. Mr. Justiniano Is a Drug Addict in Need of Treatment

Mr. Justiniano has received some treatment for his alcohol and drug addictions; however, he never fully committed himself to the process of recovery and he has never completed any programs. While he may not be able to qualify for a Bureau of Prisons (BOP) treatment program during his incarceration because his offense conduct involved the possession of a firearm, he desperately wants to receive treatment so that he can be better equipped to deal with his addictions when he is ultimately released.

Nonetheless, in the PSR addendum the Probation Department's recommendation includes the request that the Court include a "Judicial recommendation" that Mr. Justiniano be allowed to participate in the Bureau of Prisons Residential Drug Treatment program. See PSR Addendum, P. 21. We join the Probation Department in that request.

### E. Mr. Justiniano Should be Given Credit for the Time He Spent in State Custody

Mr. Justiniano was arrested and taken into custody by the New York City Police Department on June 6, 2007. Nineteen days later, on June 25, 2007, he was presented to the United States District Court for the Southern District of New York for an initial appearance. He has been in federal custody since that date. State level charges related to Mr. Justiniano's possession of the .38 were never pursued as the instant case effectively replaced the state charges; accordingly, the time he spent in state custody cannot be attributed to a state required sentence.

However, because Mr. Justiniano was arrested and in the custody of the state judicial system for several days before he was taken into federal custody there is a significant chance that the BOP will not give him credit for the days that he was in state custody when they

ultimately compute his sentence. It has been defense counsel's experience that a Judge's intention to grant credit for time served in state custody is not always followed by the BOP even when it is expressly stated and carefully worded in the judgment papers.

Accordingly, I respectfully request that this Court reduce any contemplated sentence by 19 days to account for the time that Mr. Justiniano was in state custody.

**F. Conclusion**

It is needless to say that Mr. Justiniano is very remorseful for his actions and he wholly regrets the impact that they have had on his family. As with many people in this world, if Mr. Justiniano had a chance to do it over, he would change many things.

We request that Your Honor consider all of the factors discussed herein and impose a sentence that is as lenient as possible.

Respectfully:

Lee Ginsberg, Esq.

cc:   AUSA Benjamin Gruenstein (Via ECF)
      USPO Diane Plummer (Via Fax: 914 340 4055)
      Mr. Jesus Justiniano (Via US Mail)